OGDEN vs. PETERS and others.

The declarations of parties, made at the time a transaction occurs, are usually received in evidence, as part of the *res gestæ*. But the declarations of one of the parties, made at another time, and particularly in the absence of the other, are inadmissible.

Neither is it competent to prove by one who has executed a conveyance, what was his supposition at the time, in order to invalidate it; unless such supposition was grounded upon the fraudulent representations of the other party.

Declarations made by a debtor, a week or two after having executed an assignment of his property for the benefit of creditors; an estimate put upon his property by him, at some time other than that when the assignment was made; and the testimony of such debtor, when examined as a witness, that at the time of executing the assignment he supposed himself solvent, are inadmissible as evidence to invalidate the assignment on the ground that the assignor, at the time, thought his assets sufficient to pay his debts.

An assignment by a debtor will not be rendered invalid by proof of the mere supposition or belief of the debtor, at the time of making the same, that he was solvent, when in fact he had not sufficient property to pay his debts.

Such a supposition, on the part of the debtor, is not necessarily a badge of fraud; but it is susceptible of an explanation consistent with honesty of purpose.

THIS was an appeal by the defendants, from a judgment rendered against them at a special term. The plaintiffs were judgment debtors of the defendant Cornelius Peters, and the complaint was filed for the purpose of setting aside an assignment of his property, made by Peters to the defendants Brock and Doughty, in trust for the benefit of his creditors, on the ground that it was fraudulent and void as against creditors. The defendants severally answered, denying all fraud, or intent to delay or hinder creditors, &c. The cause was referred to a referee, to take proofs, and was brought to a hearing upon the pleadings and the proofs so taken. The justice, at special term, made a decision or decree declaring the assignment to be void, by reason of its having been made when the assignor supposed he was not insolvent. The opinion of the court sets forth all the other facts necessary to be mentioned.

Ogden *v.* Peters.

*E. Q. Eldridge,* for the appellants.

*G. Dean,* for the respondent.

*By the Court,* S. B. STRONG, J. It has long been lamented by learned judges that assignments by insolvent debtors, giving preferences to a favored portion of their creditors, were tolerated by law. They are, however, if otherwise unobjectionable, valid, and the courts are bound to sustain them.

There is no objection to the assignment in this case apparent upon the face of it. It contains no provision calling for or excusing, delay, or for the appropriation of the property assigned for any other purpose than the payment of the debts of the assignor, nor for any other benefit to him. There is evidence to show that the debtor previous to his executing the assignment, but not so near that time as to make the whole one transaction, transferred a portion of his property to his daughter, in payment for her services in his family after she was sixteen years old. It is at least doubtful whether her claim was a valid one ; but an honest belief on the part of the father that it was— and there is nothing to show that he did not entertain such belief—would exempt him from the charge of a fraudulent intent. It is not therefore necessary to decide whether a fraudulent transfer by an insolvent debtor, of a part of his property, would invalidate a subsequent assignment of the residue, for the benefit of his creditors.

There was clearly a valid delivery of the property to the assignees. The debtor supposed at the time of the assignment that the subsequent disposition of the property was to be confided, to some extent, to him. But there was no agreement to that effect, and he was informed by one of the counsel that the law did not allow him to have any interest in the assignment ; that the law would not tolerate it ; that the assignees must settle up the estate ; that it had been decided that an assignor could be clerk for the assignees, but that it would be better for him not to act as such. It appears from the testimony of Mr. Ketcham that he was in the store when the assignment was

made, and that he was put in possession immediately afterwards, as the agent of the assignees; and that he knew of no person having control afterwards but the assignees, and himself, for them. The debtor, subsequent to the assignment, sold a small part of the transferred goods and received pay for them, and also of some small debts, but it does not appear that he had any authority from the assignees to do either; and he paid the moneys to them.

The principal objection to the assignment, and that which induced the learned judge at the special term to decree that it should be set aside, is that the assignor supposed at the time it was made that his assets were sufficient to pay all his liabilities. The evidence adduced to establish this was, I think, inadmissible. It consisted of declarations made by him, a week or two after the assignment; an estimate which he put upon his property, but when, does not appear, although from what was stated by the witness who testified to his having made such estimate, it would seem that it was not at the time of the assignment; and the declaration of the debtor, when examined as a witness, that he supposed himself solvent when he made the assignment. The declarations of parties, at the time of the transaction, are usually received in evidence as part of the *res gestæ*. But the declarations of one of the parties, at another time, and particularly in the absence of the other, are inadmissible. Neither is it, in my opinion, competent to prove by one who has executed a conveyance, what was his supposition, at the time, in order to invalidate it; unless indeed such supposition was grounded upon the fraudulent representations of the other party. It would be a dangerous species of evidence, and often effectuate great injustice. The fact that this evidence was adduced to invalidate a voluntary assignment can make no difference where, as in this case, others are interested in its execution.

But if the proof had been competent, and had shown satisfactorily that the debtor supposed at the time of the assignment that he was able to pay all his debts, that would not have conclusively established the charge of fraud. Some of the cases

Ogden *v.* Peters.

have decided that where a debtor was perfectly solvent, having funds immediately available for the satisfaction of his debts, and knew that he was so, an assignment of all his property to pay his debts, must necessarily be to delay his creditors in the collection of their debts, and must be designed for his own advantage, and was therefore void, under the statute. But none of them have gone so far as to invalidate an assignment upon proof of the mere supposition or belief of the debtor that he was solvent, when in fact he had not sufficient property to pay his debts. He might believe himself solvent, and yet have so much doubt upon the subject, from the uncertain valuation of his property and particularly of that part of it which consisted of choses in action, and the representations of his friends, that he might honestly suppose that an assignment would prove beneficial to his creditors. So far as it relates to the charge of actual fraud, much must of course depend upon the strength of the belief. That might approach very near to a certainty, and then it would justify the mere inference. All that I intend to say is that the supposition is not necessarily a badge of fraud, but that it is susceptible of an explanation consistent with honesty of purpose. The case of *Rokenbaugh* v. *Hubbell,*(a) de-

(a) 5 *Law Reporter*, *N. S.* 95. Decided at the general term in the city of New-York, March, 1852. The following were the points decided:

Where a debtor made an assignment of his property to trustees for the benefit of his creditors, and at the time of making the same, supposed that he had, and in fact had, sufficient property for the payment of his debts, but was apprehensive that his property might be sacrificed by creditors seeking to collect their debts by legal proceedings; upon a bill filed by a creditor to set aside the assignment, upon the ground that the insolvent having sufficient property to pay his debts, and the assignment being made to prevent a sacrifice of his property, it was void as against creditors; *held*, that the true rule in such a case is, that such a purpose would avoid an assignment when the sacrifice was sought to be prevented by the debtor himself, so as to enable him to realize something by way of a surplus or otherwise, but not where the sole or primary intent was to enable all the creditors to realize their entire demands and prevent loss or injury to any one; and upon the evidence, it was adjudged that the latter motive actuated the assignor. It was also held that where a man has ample means to pay all his debts in cash, there can be no reason for making an assignment giving preferences, except for the purpose of delaying creditors, and that such an assignment would be void. The case

Ogden v. Peters.

cided by the supreme court at general term (cited by the defendants' counsel from a manuscript report) went somewhat further than it is necessary for me to go, here. There the debtor not only supposed himself to be solvent but actually was so. The court, however, sustained the assignment. It was held that the true rule in such cases is that an assignment is invalid when a sacrifice of the property (by prosecuting creditors) is sought to be prevented by the debtor himself, so as to enable him to realize something by way of surplus or otherwise, but not where the sole or primary intent was to enable all the creditors to realize their entire demands and prevent loss or injury to any one.

In the case under consideration the property assigned was of uncertain value. It consisted, among other things, of real estate under heavy mortgages, bonds and mortgages, promissory notes, and goods in a country store. Whatever may have been the estimate put upon it by the debtor, he was informed by Mr. Doughty that he was hopelessly bankrupt. Mr. Eldridge, one of his counsel, after the debtor had communicated the state of his affairs, told him that he should make an assignment, and that it would be the best course for his creditors. When asked by the plaintiff's counsel what was his object in executing the assignment, he answered that from what counsel he had it was to save his property from being eat up in expenses and costs, so that his debts could be paid, and that he supposed from what his counsel had said, it would be better for his creditors, and better for him. He does not explain in what manner it would be better for himself; but certainly it would be for his advantage that all his debts should be fully paid; and if that was what he meant, (and it is the most natural inference,) it was incidental to the principal object, and evinces no fraudulent intent.

The debtor may well have supposed that his property was

however, would be different, when a debtor has sufficient property to pay all his debts at its cash value, but is unable to pay in cash as his debts become due, and his property is in danger of being sacrificed by some of his creditors. A debtor thus circumstanced may make a valid assignment.

sufficient for the payment of his debts, and yet that before he could render it available it would probably be so far reduced by hasty or forced sales, and his liabilities so far increased by the addition of costs created by anxious and competing creditors, that it would become inadequate to satisfy all his debts. Under such a supposition, and in such circumstances, an assignment for the benefit of his creditors would not only be exempt from the charge of fraud, but would be commendable.

If, then, assignments are to be tolerated at all, it appears to me that the one under consideration must be sustained. Our courts have latterly gone very far in setting them aside, and have condemned them when, in my opinion, there was neither actual nor presumptive fraud. I am not inclined to go any farther, but am disposed to leave it to the legislature to abolish, if they shall think proper to do so, all preferential assignments.

The judgment at the special term should be reversed, and the complaint dismissed; but without costs as against the plaintiff. The defendants may retain their own costs out of the avails of the assigned property.

[DUTCHESS GENERAL TERM, July 5, 1853. *Barculo, Brown* and *S. B. Strong*, Justices.]